**Joe D. WHISENHUNT, Appellant,**

v.

**James R. BATES, Appellee.**

**No. 8952.**

Court of Appeals of Texas, Texarkana.

Nov. 10, 1981.

Rehearing Denied Dec. 15, 1981.

G. Leory Street, D. Ronald Reneker, Geary, Stahl & Spencer, Dallas, for appellant.

Rick J. W. Graham, Gary E. Smith, Graham & Bright, Dallas, for appellee.

CORNELIUS, Chief Justice.

Joe Whisenhunt sued James Bates to collect a promissory note. Bates filed a counterclaim seeking damages for fraudulent representations allegedly made by Whisenhunt in connection with the execution of the note ancillary to a sale of land. Whisenhunt obtained a default judgment originally, but the trial court set it aside on motion of Bates and later the entire case was tried to a jury. The jury found that Bates' execution of the note was induced by three fraudulent representations of Whisenhunt. Damages amounting to $400,000.00 were awarded, with Whisenhunt taking nothing in his suit on the note. The appeal presents forty-eight points of error.

The promissory note which forms the basis of both claims was executed by Bates to Whisenhunt in connection with Bates' purchase of some land which Whisenhunt had previously owned. Whisenhunt is a resident of Arkansas and Bates is a resident of Kansas. Bates is self-employed as a land developer, condominium builder and farmer. He is experienced in real estate transactions, having been involved in buying and selling since 1950. He graduated from Oklahoma A & M in 1951 with a major in Animal Husbandry and has been engaged in farming for over thirty years.

The land in question is located in Reeves County, Texas. It was acquired from Whisenhunt in April of 1978 by Arons Investments, Inc. At about the time Arons acquired the property from Whisenhunt, Bates began negotiating with Mr. Hedley, President of Arons, for the purchase of the property. He had learned of Arons and the land through a contact with realtors in Springfield, Missouri. The realtors came with Bates to Texas where he inspected the land and met with Mr. Hedley in the latter part of April of 1978. Negotiations between Bates and Hedley continued from April to November 28, 1978, when Bates and Arons closed the sale of the land. A contract to purchase the land had been executed earlier, in June of 1978. On his initial trip to the farm with the Springfield realtors, Bates spent four to five hours on the farm where he met the tenant farmers, was shown around the farm generally and was shown the crops which were being grown. At this time Arons still owed Whisenhunt a part of the purchase price for the sale of the property from him to it, and that resulted in a meeting between Whisenhunt and Bates on August 6, 1978. Bates and Whisenhunt also met on one other occasion in early November of 1978. Bates concedes that Whisenhunt had nothing to do with the price he agreed to pay for the farm and he was not involved at all in the closing of the real estate transaction.

Bates' purchase of the property involved a trade. In addition to the property in question, Bates received a mortgage on a hotel in Waco and he gave Arons a subdivision on Table Rock Lake in Southern Missouri. Bates testified that he evaluated the farm at about $600,000.00. The property was mortgaged to the extent of $96,500.00 to Kansas City Life Insurance Company, $175,000.00 to the Bank of New Madrid, and $8,000.00 to the First National Bank of Dallas. As a part of the purchase, Bates assumed Arons' debt to Whisenhunt as well as the second lien held by the Bank of New Madrid and the first lien held by Kansas City Life. Following his purchase of the land, Bates executed the promissory note to Whisenhunt on January 10, 1979, in the principal amount of $70,635.78, which represented a resolution of the dispute between the parties as to the amount Bates owed Whisenhunt.

Bates ultimately defaulted on the note, and as a result the liens were foreclosed and the property sold. The basis for Bates' fraud claim is that Whisenhunt made certain representations which induced him to purchase the land from Arons in November of 1978 and to execute the note to Whisenhunt two and a half months later. Bates alleged that on numerous occasions Whisenhunt represented that the return from the sale of the crops would be in excess of $100,000.00, that he had already arranged or would arrange for the renewal and extension of the $175,000.00 mortgage payable to the Bank of New Madrid, and that the property was being farmed in 1978 on the

same terms as contained in a written lease which had expired prior to 1978. The jury found that Whisenhunt made these three representations and that they were false and fraudulent, and those findings formed the basis of the damage recovery.

Points of error 1 through 9 contend that there was no evidence or insufficient evidence to support the jury's award of damages. We agree. In a case alleging fraud in a real estate transaction the plaintiff has alternate measures for damages. One is the common law measurement, which is the value parted with, less the value of the thing received, plus any other pecuniary consequential damages proximately caused by the fraud. *Success Motivation Institute, Inc. v. Lawlis,* 503 S.W.2d 864 (Tex.Civ.App. —Houston [1st Dist.] 1973, writ ref'd n.r.e.); *Traylor v. Gray,* 547 S.W.2d 644 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). The other is that authorized by Tex.Bus. & Com. Code Ann. § 27.01 (Vernon 1968), and which is called the Benefit of the Bargain Rule. Damages under that rule are calculated by subtracting the value of the land in the condition received from its value as represented.

In this proceeding Bates pleaded both common law fraud and an action under Section 27.01, but the charge submitted to the jury covered only the statutory measure. It inquired of the jury:

"SPECIAL ISSUE NO. 7:

What amount of money, if paid now in cash, would fully and fairly compensate Bates for the actual damage caused him by the representations of Whisenhunt referred to in Special Issue Nos. 5 and 6?

ANSWER: 'In dollars and Cents, if any' $400,000.00 "

The charge instructed the jury that:

"You are instructed that the proper measure of actual damages for fraud in a transaction envolving [sic] real estate is the the [sic] difference between the value of the real estate as represented and its actual value in the condition in which it is delivered."

There is no evidence in the record of the value of the land at the time Bates purchased it, nor is there any evidence that Whisenhunt or any one else represented the land to have any particular value prior to Bates' purchase of it.

Bates concedes that there is no evidence of either of these values. He insists, however, that the damages awarded by the jury are special consequential damages, such as lost crop revenues, extra farm expenditures, lost equity and the like, caused by the representations, but in doing so he tacitly concedes error. No issue or instruction on the recovery of the special damages for common law fraud was requested. In that situation, Bates waived the right to a determination of any common law action he may have had, and the jury was limited to finding damages as specified in the issue and instruction which were given. Tex.R.Civ.P. 279; *Culligan v. Wootton,* 254 S.W.2d 155 (Tex.Civ.App.—San Antonio 1952, writ ref'd n.r.e.); 3 McDonald's, Texas Civil Practice § 12.36.2 at 433, and cases cited.

For the reasons stated, the judgment must be reversed. However, it appears that the case may have been tried on the wrong theory, and in the interest of justice we will remand the case for a new trial rather than render judgment. In view of our disposition of Points 1 through 9, it is not necessary that we discuss or rule upon the other points of error.

Reversed and remanded.